U.S. DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROSEMARY BROWN,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION No.** |
| | : | |
| **v.** | : | |
| | : | |
| **JOETTE KATZ, in her individual and official capacities; CINDY BUTTERFIELD, in her individual and official capacities** | : | |
| **Defendants.** | : | |
| | : | **FEBRUARY 15, 2018** |

## COMPLAINT

### I.  INTRODUCTION

1. Plaintiff, Rosemary Brown, brings this action against Defendants Joette Katz, Commissioner of the Department of Children and Families, and Cindy Butterfield, the Deputy Commissioner of the Department of Children and Families, for the violation of her legal and constitutional rights. Defendants deprived Plaintiff of her property and liberty interests without due process in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. Through this action, Plaintiff seeks damages and prospective injunctive relief.

### II.  PARTIES

2. Plaintiff, Rosemary Brown, is an individual currently residing in Connecticut. Plaintiff was formerly employed at the Department of Children and Families.

3. Defendant, Joette Katz ("Katz"), is an individual residing in Connecticut. She is currently employed as the Commissioner of the Department of Children and Families. At all times relevant to the allegations in this Complaint Defendant Katz acted under the color of state law and is being sued in her individual and official capacities.

4. Defendant Cindy Butterfield ("Butterfield") is an individual residing in Connecticut. Defendant Butterfield is the Deputy Commissioner at the Department of Children and Families. At all times relevant to the allegations in this Complaint Defendant Butterfield acted under the color of state law and is being sued in her individual and official capacities.

### III. JURISDICTION

5. This Court possesses subject matter jurisdiction over this action because Plaintiff's claims present a federal question under 28 U.S.C. § 1331.

### IV. BACKGROUND

6. Plaintiff commenced her employment at DCF in about September, 2013.

7. In about December, 2014, Plaintiff transferred from DCF to the State of Connecticut Office of Labor Relations as a promotion to the classification of Labor Relations Specialist.

8. In about March, 2016, Defendant Katz recruited Plaintiff to return to DCF and serve as the Assistant Director of Human Resources.

9. Defendant Katz communicated at the time that Plaintiff would be elevated to the position of Director of Human Resources at DCF once the incumbent Director of Human Resources retired.

10. With that expectation, Plaintiff accepted the offer and transferred back to DCF in approximately March, 2016.

11. When she was working at DCF, Plaintiff was a permanent employee under a permanent appointment in the classified service. As such, Plaintiff could only be terminated from her employment for just cause. (*see, e.g.,* Conn. Agencies Regs. § 5-240-5a.)

12. In addition, when Plaintiff worked at DCF, Plaintiff was entitled to the protection of the pre-discipline procedures established by the State of Connecticut, including, but not limited to: pre-disciplinary notice of the form of discipline being considered, a concise statement explaining what evidence supports the imposition of the discipline being considered, a specific time and place for a meeting where the employee has an opportunity to present her side of the story and the reasons why the employee feels that the action being considered should not be taken. (*see, e.g.*, Conn. Agencies Regs. § 5-240-5a(c); Conn. Agencies Regs. § 5-240-7a.)

13. When Plaintiff worked at DCF, she was also entitled to the protection of the post-discipline procedures established by the State of Connecticut, including, but not limited to, written notice which describes the reasons for the decision, the effective date of the decision, and informs the employee of any rights to further review or appeal which she possesses. Importantly, except in certain limited circumstances, the effective date of a dismissal or a demotion must be at least two weeks from the date of the notice. (*see, e.g.*, Conn. Agencies Regs. § 5-240-5a(d); Conn. Agencies Regs. § 5-240-8a.)

14. Plaintiff continued working under the title of Assistant Director of Human Resources at DCF for more than a year, until approximately September, 2017, when she was given a promotional appointment to the position of Human Resources Director (Human Resources Administrator 3) at DCF.

15. When Plaintiff received the promotional appointment to the position of Human Resources Administrator 3 at DCF, it was a promotional appointment to a higher classification in a field of work that was directly related to her prior position at DCF, and she was promoted from within the DCF.

16. Plaintiff's promotional appointment to Human Resources Administrate 3 at DCF was subject to a six month promotional working test period and governed by additional statutory provisions.

17. Pursuant to section 5-228(e) of the Connecticut General Statutes, "[a]ny promotional appointee from within the agency who is dismissed from the position to which he or she was promoted during such working test period, or at the conclusion thereof, shall be restored to a position in the same class in which he or she had been employed prior to his or her promotion."

18. Additionally, section 5-230 of the Connecticut General Statutes mandates that ". . . any employee who has served part of a working test period in a position in the classified service who is, pursuant to examination, appointed to, and serves part of a working test period in, a position in a higher classification in a field of work directly related to his or her prior position, from which new position he or she is dismissed, shall, at his or her option, be reappointed to the position which such employee first had . . . ." Section 5-230 also mandates that an agency provide an employee a "fair trial" in a working test period before removing the employee from the position during the working test period.

19. Plaintiff qualified for the protection of both § 5-228(e) and § 5-230 when she received a promotional appointment to the position of Human Resources Administrator 3 at DCF in September 2017.

20. By letter dated January 26, 2018, which was signed by Defendant Butterfield, Defendants notified Plaintiff that she was not only being removed during her working test period from the position of Human Resources Administrator 3, but also separated from state service effective immediately.

21. The January 26, 2018 letter stated that DCF determined that Plaintiff's performance during the first four months of her promotional working test period has not supported retaining Plaintiff in the position of Human Resources Administrator 3.

22. The January 26, 2018 letter cited the following portion of § 5-230 of the Connecticut General Statutes as the authority for the decision to drop Plaintiff during her working test period and dismiss her from state service and terminate her employment: "[a]t any time during the working test period, after fair trial, the appointing authority may remove any employee if, in the opinion of such appointing authority, the working test indicates that such employee is unable or unwilling to perform his or her duties so as to merit continuance in such position . . . ."

23. The January 26, 2018 letter asserted, falsely, that Plaintiff was "unable or unwilling to perform . . . her duties so as to merit continuance in [her] position."  (The January 26, 2018, letter also failed to adhere to another requirement in the same statute, § 5-230, which required Plaintiff to be restored to her prior position with the DCF - - not dismissed from state service effective immediately.)

24. The January 26, 2018 letter also referenced an enclosed evaluation of Plaintiff's performance during the promotional working test period of the classification of Human Resources Administrator 3 for the DCF.

25. That enclosed performance appraisal, which provided the basis for the January 26, 2018 letter, was signed by both Defendants Katz and Butterfield and dated January 26, 2018. The January 26, 2018 performance appraisal was completed during the course of the termination of Plaintiff's employment.

26. The January 26, 2018 performance appraisal contained many false statements portraying Plaintiff as someone who was incompetent or was unable to do her job, and provided an overall evaluation of Plaintiff as "Unsatisfactory."

27. On the job element of "Ability to learn new duties," Defendants rated Plaintiff as "less than good," meaning that she "requires a great deal of instruction."

28. On the job element of "Judgment," Defendants rated Plaintiff as "less than good," meaning that she is "inclined to be illogical."

29. On the job element of "Cooperation," Defendants rated Plaintiff as "less than good," meaning that she exhibited "very poor cooperation."

30. On the January 26, 2018 performance appraisal, when Defendants were asked to answer the following question, "Is Employee well suited for the type of work being done? (if 'No,' indicate type of work that would appear to be more suitable)," Defendants checked the box for "No" and stated that "Given the nature of the deficits noted, the Agency has determined that Ms. Brown is not suited to perform work on behalf of DCF."

31. Defendants also attached a narrative statement to the January 26, 2018 performance evaluation which further maligned Plaintiff, both personally and professionally, and contained additional false statements which carry significant potential for disqualifying Plaintiff from future employment opportunities.

32. For instance, the performance evaluation narrative stated that "[a]lthough it appears that Ms. Brown has knowledge in these areas, some of the advice that she provided to administration has been questionable and raised concerns about either accurate knowledge or motives for providing such advice."

33. The performance evaluation narrative further stated that "[d]espite Ms. Brown's technical skills, she has struggled during this time to display appropriate professional relationships with key staff in the administration.  This lack of ability to maintain a professional demeanor when faced with decisions that do not comport with her preferences has led to a lack of confidence in her ability or willingness to represent the Commissioner and/or the Agency in accordance with its mission and goals especially should those be in conflict with her own personal or professional preferences."

34. The performance evaluation narrative also stated that "Ms. Brown has displayed an unwillingness or inability to accept the authority of her direct supervisor.  She has on more than one occasion directed the Deputy Commissioner that the Deputy was not to discuss HR matters with the Commissioner or other Agencies.  This indicates, at best, a lack of understanding of the chain of command and lack of appreciation of the authority of her superiors and at worse a direct repudiation of those factors.  In addressing a relatively minor process issue that involved two different units, Ms. Brown refused to accept the decision of the Deputy Commissioner and the Commissioner as to how that process would be handled, engaging in conduct that was unbecoming to her office and the Agency."

35. The performance evaluation narrative also stated that "Ms. Brown has displaced an unwillingness or inability to form professional working relationships with key members of the administration to a degree that renders her unable to perform her job duties as HR Administrator for the Department of Children and Families.  Although her technical skills supported the decision to promote, her demonstrated lack of professionalism when dealing with her superiors and other key members of the administration has led to the

determination that she is not well suited to this position.  On several occasions Ms. Brown has threatened to quit over the manner in which decisions were made or the decisions themselves, stating that she could not work under those circumstances."

36. The performance evaluation narrative also stated that "Given the areas of concern, it has been determined the extension of the working test period and training would not correct the issues.  The ability to maintain a professional and mature demeanor at all times when dealing with Agency staff and issues is a critical element of success in this position.  The inability to do so has led to the determination that Ms. Brown has failed to display the skills necessary to pass her working test period as Human Resources Administrator 3 for the Department of Children and Families."

37. The January 26, 2018 letter, the January 26, 2018 performance evaluation, and the narrative statement attached to it, were all published in Plaintiff's official personnel file, and to the State of Connecticut Department of Administrative Services.

38. The January 26, 2018 letter, the January 26, 2018 performance evaluation, and the narrative statement attached to it, go to the heart of Plaintiff's professional competence and damage her professional reputation to such an extent as to severely impede her ability to continue in the field of human resources administration.

39. Importantly, Plaintiff disputes the accuracy of the accusations made against her in those documents.  Plaintiff also denies that she was given a "fair trial" during her working test period as Human Resources Administrator 3, as required by Conn. Gen. Stat. § 5-230, before Defendants removed her from that position and dismissed her from state service on January 26, 2018.  In actuality, Defendants both praised Plaintiff's performance and

her dedication on numerous occasions during her tenure with DCF, both before and after her promotional appointment to the position of Human Resources Administrator 3.

40. Prior to making those statements about Plaintiff in the January 26, 2018 letter, the January 26, 2018 performance evaluation, and the attached narrative statement, Plaintiff was not provided any opportunity to respond to the charges or clear her name.

41. In fact, Plaintiff did not receive any advance notice of the charges against her or the opportunity to be heard prior to the termination of her employment.

42. Subsequent to the termination of her employment, Plaintiff wrote directly to Defendants Katz and Butterfield regarding the violation of her statutory and constitutional rights and requested that Defendants reinstate her to her position at DCF, but Defendants denied Plaintiff's requests and continued to persist in knowingly violating Plaintiff's statutory and constitutional rights.

**COUNT ONE:** **DEPRIVATION OF PROPERTY INTEREST WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983**

43. Based on the foregoing, Defendants Katz and Butterfield both deprived Plaintiff of a property interest protected by the Fourteenth Amendment to the United States Constitution, without due process of law.

44. Both Defendants Katz and Butterfield acted under the color of state law to violate Plaintiff's rights under the Fourteenth Amendment, and are thus liable to Plaintiff under 42 U.S.C. § 1983.

45. Since Plaintiff was a permanent employee in the classified service of the State of Connecticut, Plaintiff has a property interest in her continued employment and could not be terminated from her employment without just cause.

46. Additionally, under both Conn. Gen. Stat. § 5-228(e) and Conn. Gen. Stat. § 5-230, if Plaintiff was removed during her working test period from her promotional appointment to Human Resources Administrator 3 at DCF, Defendants were required to restore her to her prior position at DCF.  Furthermore, under Conn. Gen. Stat. § 5-230, Plaintiff could only be removed during her promotional appointment to Human Resources Administrator 3 during her working test period after a fair trial, which Plaintiff did not receive.  Plaintiff also had rights to pre-discipline and post-discipline process under the personnel regulations of the State of Connecticut, which Defendants disregarded.

47. Accordingly, Plaintiff had a property interest in continued employment that was protected by the Due Process Clause of the Fourteenth Amendment.

48. Defendants Katz and Butterfield deprived Plaintiff of her property interest in continued employment when they terminated her employment without any advance notice or a pre-termination hearing, in violation of the Fourteenth Amendment.

49. Defendants Katz and Butterfield acted with reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

50. As a consequence of Defendants' conduct, Plaintiff lost her employment and suffered damages, including, but not limited to, lost wages, compensation, and benefits, emotional distress, loss of enjoyment of life, and harm to her personal and professional reputation.

51. Plaintiff has also incurred, and continues to incur, attorney's fees and costs.

**COUNT TWO:** **DEPRIVATION OF LIBERTY INTEREST WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FOURTEENTH AMENDMENT, 42 U.S.C. § 1983**

52. Based on the foregoing, Defendants Katz and Butterfield both deprived Plaintiff of a liberty interest protected by the Fourteenth Amendment to the United States Constitution, without due process of law.

53. Both Defendants Katz and Butterfield acted under the color of state law to violate Plaintiff's rights under the Fourteenth Amendment, and are thus liable to Plaintiff under 42 U.S.C. § 1983.

54. In the course of dropping Plaintiff from her working test period and terminating Plaintiff's employment on January 26, 2018, Defendants Katz and Butterfield made false and stigmatizing statements about Plaintiff's personal and professional capabilities and competence that carry significant potential for interfering with Plaintiff's ability to work in the field of human resources administration, and which will be harmful to Plaintiff's reputation, and published those statements to the State of Connecticut Department of Administrative Services and in Plaintiff's personnel file.

55. Defendants Katz and Butterfield deprived Plaintiff of her liberty interest and terminated her employment without any advance notice or a pre-termination hearing or other opportunity to refute the charges or receive a name clearing hearing, in violation of the Fourteenth Amendment.

56. Defendants Katz and Butterfield acted with reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

57. As a consequence of Defendants' conduct, Plaintiff lost her employment and suffered damages, including, but not limited to, lost wages, compensation, and benefits, emotional distress, loss of enjoyment of life, and harm to her personal and professional reputation.

58. Plaintiff has also incurred, and continues to incur, attorney's fees and costs.

**DEMAND FOR RELIEF**

Plaintiff hereby demands Judgment against Defendants, a Trial by Jury, and other relief, including, but not limited to the following:

1. Compensatory economic and non-economic damages, including, but not limited to, damages for lost compensation, wages and benefits, emotional distress, damage to reputation, and loss of enjoyment of life.

2. Immediate Reinstatement.

3. Attorney's fees and costs pursuant to 42 U.S.C. § 1988.

4. Punitive damages.

5. Interest.

6. Other Prospective Injunctive Relief, including, but not limited to, the removal of all false and negative statements from Plaintiff's personnel file and public documents maintained by Defendants, and a name clearing hearing.

7. Other relief that in law or equity may pertain.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

                                        PLAINTIFF,
                                        ROSEMARY BROWN

By: /s/*Todd Steigman*
Todd D. Steigman (ct26875)
Madsen, Prestley & Parenteau, LLC
402 Asylum Street
Hartford, CT 06103
Tel: (860) 246-2466;
Fax: (860) 246-1794
tsteigman@mppjustice.com